UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES UNDERWRITERS                :
INSURANCE COMPANY,                        :
                                          :
                        Plaintiff,        :          02 Civ. 4182 (CSH)
                                          :
        -against-                         :
                                          :
FALCON CONSTRUCTION CORP., THE            :          POST-TRIAL OPINION
NEW YORK CITY HOUSING AUTHORITY,          :
and ANA FLORES,                           :
                                          :
                        Defendants.       :
------------------------------------------------------------ x

HAIGHT, Senior District Judge:

        In this declaratory judgment action, plaintiff United States Underwriters Insurance Company

("U.S. Underwriters") seeks a determination that it is not obligated to defend or indemnify the New

York City Housing Authority ("NYCHA") with respect to a personal injury claim asserted against

NYCHA by Ana Flores ("Flores") in state court.  Flores was injured when she fell in the vestibule

of a NYCHA apartment building being renovated by Falcon Construction Company ("Falcon").  The

issue is whether U.S. Underwriters must defend or indemnify NYCHA with respect to the Flores

state court action based on two insurance policies issued by U.S. Underwriters: (1) a commercial

general liability policy ("CGL policy") issued to Falcon, under which NYCHA is an additional

insured, and (2) an owners and contractors protective liability policy ("OCP policy") issued to

NYCHA.

## I.  PROCEDURAL HISTORY

        On August 27, 2003, Judge Swain of this Court, to whom the case was originally assigned,

issued an Opinion denying U.S. Underwriters' motion for summary judgment.  *U.S. Underwriters*

*Ins. Co. v. Falcon Constr. Corp.*, 2003 WL 22019429 (S.D.N.Y. Aug. 27, 2003).  On May 10, 2006, Judge Swain issued an Opinion denying both U.S. Underwriters' motion for partial summary judgment and NYCHA's motion for summary judgment.  *U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.*, 2006 WL 1292206 (S.D.N.Y. May 10, 2006).  On October 12, 2006, the case was transferred from Judge Swain to the undersigned.  On October 30, 2006, this Court issued an Opinion denying NYCHA's motion *in limine* to preclude U.S. Underwriters from offering evidence that NYCHA failed to notify U.S. Underwriters of the underlying claim in a timely manner under the OCP policy.  *U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.*, 2006 WL 3146422 (S.D.N.Y. Oct. 30, 2006).

The case was tried to the Court without a jury, and the parties submitted post-trial briefs and reply briefs.  This Opinion sets forth the Court's findings of fact and conclusions of law, in accordance with Federal Rule of Civil Procedure 52(a).

## II.  FINDINGS OF FACT

The following constitute the findings of fact of this Court, and are based on the trial testimony, exhibits, the statement of undisputed facts in the pretrial order, and proposed findings of fact submitted by the parties.

### A.    The Insurance Policies

U.S. Underwriters issued a CGL policy, numbered CL 3036359, to Falcon for the policy period of October 20, 1999 to October 20, 2000.  NYCHA is an additional insured under the CGL policy.[1]  Pl. Ex. 1.

---

[1] NYCHA is an additional insured under the "Automatic Additional Insureds – Construction Contracts" endorsement to the CGL policy, which amends the definition of insured to include any person or organization with whom Falcon agrees in a written construction contract

The CGL policy includes several relevant limitations and exclusions to coverage. First, the policy limits coverage to claims arising from certain classification codes, namely "Carpentry-Interior" and "Plumbing-Residential" work. *See* Classification Limitation Endorsement & Policy Declaration, Pl. Ex. 1. Second, the policy excludes from coverage claims arising out of operations performed for any insured by independent contractors, or omissions of any insured in connection with its general supervision of such operations. *See* Independent Contractors Exclusion, Pl. Ex. 1. Third, the policy excludes coverage for damages incurred by an insured due to assumption of liability in a contract or agreement.[2] *See* Contractual Liability Exclusion, CGL Policy Coverage Form § I.2(b), Pl. Ex. 1.

U.S. Underwriters also issued an OCP policy, numbered CL 3036360, to NYCHA for the policy period of October 20, 1999 to October 20, 2000. The OCP policy does not provide any coverage to Falcon. The OCP policy includes a contractual liability exclusion, but does not include a classification limitation endorsement or an independent contractors exclusion. Pl. Ex. 2.

The CGL and OCP policies both require the insured to notify U.S. Underwriters "as soon as practicable" of a claim or suit brought against the insured, or of an occurrence that could give rise to such a claim or suit. Specifically, both the CGL and OCP policies contain, with immaterial

---

to name as an insured. The additional insured is insured with respect to liability arising out of Falcon's ongoing operations for the additional insured on the project specified in the construction contract. Pl. Ex. 1.

[2] The contractual liability exclusion does not apply to liability the insured would have had in the absence of the contract or agreement, or to liability assumed in certain "insured contracts," defined in the policy and not applicable in this case. Pl. Ex. 1.

variations,[3] the following notice provision:

**Duties In The Event Of Occurrence, Claim Or Suit**

    a.  You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim.  To the extent possible, notice should include:
        (1) How, when and where the "occurrence" took place;
        (2) The names and addresses of any injured persons and witnesses; and
        (3) The nature and location of any injury or damage arising out of the "occurrence."

    b.  If a claim is made or "suit" is brought against any insured, you must:
        (1) Immediately record the specifics of the claim or "suit" and the dated received; and
        (2) Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.  You and any other involved insured must:
        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
        . . .

CGL Policy Coverage Form § IV.2, Pl. Ex. 1; OCP Policy Coverage Form § IV.4, Pl. Ex. 2.  The notice provisions in the CGL and OCP policies do not explicitly require the insured to identify a particular policy or policy number when notifying U.S. Underwriters of an occurrence or claim.  *Id.*

    Both the CGL and OCP policies appear to have been purchased by Falcon, as required by conditions of the contract between Falcon and NYCHA for renovation of the Patterson Houses.[4]

---

    [3] The notice provisions in the two policies are identical except that the CGL policy refers to "occurrence or offense," while the OCP policy refers to "occurrence."  *Id.*

    [4] *See* Falcon-NYCHA Contract, Amendments to General Conditions §§ 18(a)(2)("The Contractor shall carry commercial general liability insurance . . . to protect the Authority, the Contractor and each Subcontractor against . . . claims for bodily injury . . . suffered or caused, or alleged to have been suffered or caused, as a result of, in connection with, or in the course of, operations under this Contract."); 18(a)(4) ("The Contractor shall provide Owner's and

**B.    The Flores Incident, Claim, and Lawsuit**

NYCHA owns an apartment building at 314 East 143rd Street in the Bronx, which is part of the Patterson Houses.  NYCHA contracted with Falcon to renovate this apartment building, which included the removal and replacement of floor tiles in the lobby.  Def. Ex. A; Tr. at 411-12.  Falcon subcontracted work on floor tile removal at the Patterson Houses to KZ & V Construction.  Pl. Ex. 7.

On February 9, 2000, Flores filed a notice of claim with NYCHA, alleging that she had suffered injuries after tripping and falling in the vestibule of the building on January 9, 2000.  The notice of claim alleged that the incident took place at the landing between the security door and exit door of the building ("the incident location"), and that the injury was caused because the landing was "broken, defective, . . . uneven, [and] unlevel."  Notice of Claim, Pl. Ex. 9A.  On April 20, 2000, Flores filed suit against NYCHA in state court in connection with the July 9, 2000 incident.  Pl. Ex. 9A.

In March 2004, NYCHA paid Flores $250,000 to settle her lawsuit.  Stipulated Fact No. 3.

**C.    NYCHA's Investigation of the Flores Claim**

On February 11, 2000, NYCHA retained the private investigation firm Robert J. Trobe, C.P.P. ("Trobe") to investigate the Flores claim.  Pl. Ex. 67.

 In March 2000, Trobe interviewed several NYCHA employees at 314 East 143rd Street—the

---

Contractor's Protective Liability Insurance ('OCP') to protect the Authority against liability claims for bodily injury . . . arising from or attributable to the operations of the Contractor and its Subcontractors . . ."), Def. Ex. A.  The quoted contract between Falcon and NYCHA, contract number AD9700006, deals with modernization of front door entrances at the Patterson Houses; I infer that the related contract for tile work at the Patterson Houses, contract number GD9700006, contained the same, or very similar, insurance provisions.  *See* Tr. at 411-12.

Housing Assistant, Assistant Manager, and the Manager of the Patterson Houses.  None of these individuals had any knowledge of the alleged incident.  Pl. Ex. 10.  There was no discussion of construction work during these interviews.  Tr. at 365-66.  Trobe also interviewed the Supervisor of Caretakers and Supervisor of Grounds at the Patterson Houses, but these individuals had no knowledge of the alleged incident or of any problems at the incident location.  Pl. Ex. 11.

Trobe then "canvassed" the building, going to each apartment on each floor to find out what tenants knew about the Flores incident.  Pl. Ex. 11.  From these inquiries, Trobe "became aware of the fact that there was some type of work being done in the vestibule and there was something wrong with the tiles; that the work was started and was not completed."  Tr. at 368.

On March 9, 2000, Trobe interviewed the Assistant Superintendent and the Superintendent at the Patterson Houses.  Leland Barriero, the Assistant Superintendent, stated that around 1999 a contractor had removed tiles from the incident location, but that Barriero had halted work because of a potentially hazardous condition.  Barriero could not recall the name of the contractor.  Barthalomew Pulley, the Superintendent, offered a somewhat contrasting account.  Pulley stated that around January 2000 tile work was done at the incident location, and that the work was done "for cosmetic reasons, as well as to remove any defects in the floor that may or may not have existed."  Pl. Ex. 11.  Pulley believed that the name of the contractor was U.S. Builders, but he was not sure.  *Id.*

NYCHA manages 365 developments, or housing complexes, with about 600,000 tenants.  At any give time, there are about five to thirteen active construction contracts at each development.  Tr. at 329-30.  Various NYCHA departments maintain active records of contracts that they issued, while inactive records are stored at a centralized records center.  Tr. at 283-84.

6

On April 3, 2000, Trobe wrote a letter to NYCHA's Contract Administration Department ("CAD") requesting the file pertaining to contracts for tile work done at the incident location around January 1999. Pl. Ex. 63. Trobe contacted the CAD because it was responsible for public space upgrades that did not require a blueprint, such as tile removals and replacements. Tr. at 390, 424. The CAD never responded to Trobe's letter. Tr. at 388-89.

By May 2000, Trobe had obtained a copy of the contractor's log for the Patterson Houses, which listed contractors that had worked in the buildings between January 1, 1999 and January 31, 2000. Pl. Ex. 11. The log lists numerous contractors, including Falcon and KZ & V Construction. However, the log does not show the type of work that a particular contractor was performing and often does not indicate where within the building the contractor was working. Pl. Ex. 13A. In addition, the same log book appears to have been reused for several years. Certain 1998 dates have been crossed out and replaced with dates from 1999 and 2000, and the log may contain entries from 1998, 1999, and 2000. Pl. Ex. 13; Pl. Ex. 13A; Tr. at 382-83.

On May 11, 2000, Trobe met with Assistant Superintendent Lee at the Patterson Houses. Lee searched for work tickets and maintenance records related to the location of the alleged incident, but was unable to determine when, and by whom, the area had been tiled. Pl. Ex. 14.

At some point before June 8, 2000, Trobe found out that contract number AD9700006 was related to the tile renovation work performed at the incident location. Pl. Ex. 68. Trobe was not sure exactly how the contract number was obtained. Tr. at 394.

On June 8, 2000, Trobe wrote a follow-up letter to the CAD, again requesting the file related to tile work at 314 East 143rd Street around January 1999, and referencing contract number AD9700006. Pl. Ex. 68. The CAD never responded to Trobe's letter. Tr. at 389.

On June 15, 2000, Trobe wrote a letter to Bob Balsamello of NYCHA's risk finance (or contractors insurance) department, requesting the certificate of insurance for work done at the front entrance of 314 East 143rd Street around January 1999 on contract AD9700006.  Pl. Ex. 65; Tr. at 420.  Balsamello maintained a computer database of contractors and certificates of insurance. However, Balsamello was unable to provide Trobe with the certificate of insurance in this case because the database could only be searched by the name of the contractor, and not by the contract number.  Tr. at 420.

Trobe took little or no further investigative action until December 2000.  Trobe indicated that it would typically take between three and six months to receive a contract file from CAD because: (1) CAD was in the process of moving its office location, and (2) the file for a contract near completion would be transferred numerous times—to a development and CAD  inspector, then to the board for approval of final payment, then to the vendor payment division for final disbursements, then back to CAD, and then on to the records center.  Tr. at 390-91, 420-22.

On December 8, 2000, Trobe wrote a letter to Les Beinerman of NYCHA's records center, requesting the file for tile work done at the front entrance at 314 East 143rd Street around January 1999 on contract number AD9700006.  Pl. Ex. 15; Tr. at 282.  The records center stored inactive files for NYCHA; various other departments stored NYCHA's active records.  Tr. at 283.  Trobe did not initially contact Beinerman because Trobe believed that the relevant contract was active, rather than completed.  Tr. at 425.

According to Beinerman's testimony, after receiving Trobe's December 8, 2000 letter, Beinerman determined that the relevant contract was still active, rather than completed; thus, the file was not stored at the records center.  However, Beinerman also determined that the contract was

being handled by the design and construction department,[5] rather than the CAD.  Beinerman called

the design and construction department and spoke to the project supervisor, who had the AD9700006

contract.  Beinerman went to the design and construction department office, obtained the original

contract, and prepared a copy of the contract for Trobe.  Tr. at 324-27; 345-46.  Trobe picked up the

contract from Beinerman on January 16, 2001, and immediately forwarded it to NYCHA's counsel

in the Flores action.  Tr. at 416, 422; Pl. Ex. 16.

The document showed that Falcon had contracted with NYCHA to perform renovations at

the Patterson Houses.[6]  Def. Ex. A.

In summary, after receiving Flores' notice of claim in February 2000, it took NYCHA

approximately eleven months to identify the contract and contractor related to the alleged incident.

I find that this eleven month delay was caused primarily by the following factors: (1) the lack of

knowledge of NYCHA employees and the absence of clear records at the Patterson Houses about

tile repair work at the incident  location, (2) Trobe's failure to contact the design and construction

department about the contract, and (3) the general disorganization and inefficiency of NYCHA's

filing and record-keeping systems—including the inability to search for certificates of insurance

based on contract number and routine three-to-six month delays in obtaining files from the CAD.

**D.    Insurance Claims and Disclaimers**

By letter dated February 26, 2001, NYCHA's counsel in the Flores action contacted Falcon,

---

[5] The witnesses and documents sometimes refer to this department as the "construction management" department and the "design and capitol improvement" department.

[6] The AD9700006 contract between Falcon and NYCHA actually dealt with modernization of front door entrances at the Patterson Houses; the contract number for the tile portion of the work was GD9700006.  Tr. at 411-12; Pl. Ex. 9A.

described the Flores claim, and provided a copy of Flores' notice of claim and summons and complaint.  In addition, the letter states:

> Your company [Falcon] entered into a contract with the New York City Housing Authority to perform work at the Patterson Houses including the area [] which is the subject of this action.  The contract number was GD9700006.  I respectfully request that you forward these documents to your insurance carrier so that the assumption of the defense of the New York City Housing Authority can be promptly effectuated.  I am enclosing with this correspondence the certificate of insurance naming the New York City Housing Authority as a Certificate Holder as well as the applicable insurance binder.

Pl. Ex. 9A.

On March 6, 2001, Falcon's broker, Gary Emanuel Brokerage, Inc. ("Gary Emanuel"), forwarded NYCHA's February 26th letter, the notice of claim, and the summons and complaint to Combined Underwriting Agency ("Combined Underwriting"), an agent of U.S. Underwriters.  Pl. Ex. 9A; Tr. at 44, 256.  Along with these documents, Falcon submitted to Combined Underwriting a declaration sheet for the CGL policy that U.S. Underwriters had issued to Falcon, numbered CL 3036359.[7]  Pl. Ex. 9A.

On March 9, 2001, Combined Underwriting faxed these materials, along with an Accord General Liability Notice of Occurrence/Claim sheet and a fax cover sheet, to U.S. Underwriters.  The subject area of the fax cover sheet contains the lines "Falcon Construction Corp." and "# CL 3036359."  Pl. Ex. 9A.  This claim was assigned to Carol Ann Myrtetus, a claims examiner at U.S. Underwriters.  Tr. at 36.  Myrtetus could have checked if NYCHA was insured under any other U.S. Underwriters policies by calling the underwriting department, which maintained a list of policies indexed by the names of the insureds.  Tr. at 164-65.  Myrtetus did not do so, but stated that she

---

[7] In addition, Falcon submitted a declaration sheet for an insurance policy it held with Mount Vernon Fire Insurance Company.  That insurance policy is not relevant to this litigation.

would only contact the underwriting department to look up a policy by the name of the insured in the unusual case when a loss came in without a policy number.  Tr. at 206-07.

By letter dated March 12, 2001 to NYCHA's counsel in the Flores action, U.S. Underwriters acknowledged receipt of the February 26, 2001 letter and informed counsel that U.S. Underwriters "respectfully declines to accept the tender of the NYCHA's defense."  Pl. Ex. 22.  The letter explained that "although the NYCHA has been added to the [CGL] policy as an Additional Insured," NYCHA's tender was denied on the grounds of late notice and the policy exclusion for contractual liability.  The letter identified the relevant policy as the CGL policy, numbered CL 3036359.  The letter also listed a file number of UL 301741.  *Id.*

On March 22, 2001, Combined Underwriting faxed several documents to U.S. Underwriters, with a fax cover sheet subject heading including the lines "Falcon Construction # CL 3036359" and "NYC Housing # CL 3038419."  The fax included: (1) a copy of the notice, summons, complaint for NYCHA's third-party claims against Falcon in the Flores action; (2) a copy of Flores' summons and complaint and NYCHA's verified answer, and (3) two insurance slips from Gary Emanuel.  Both insurance slips are dated March 15, 2001, list NYCHA and Falcon as "insured" parties, list U.S. Underwriters as the insurance company, and have a box checked indicating that "[t]his was previously reported."  Pl. Ex. 24A.  The first slip lists policy number CL 3036359, while the second slip lists CL 3038419.  The slips have also been written on by hand.  On the first slip, NYCHA has been crossed out from the list of insured parties (leaving only Falcon), and "Claim # UL 301741" has been written on the right side of the slip.  On the second slip, Falcon has been crossed out from the list of insured parties (leaving only NYCHA), "/ CL 3036360" has been written in next to policy

number CL 3038419, and "Unassigned" has been written on the right side of the slip.[8]  In addition,

date stamps indicate that both insurance slips were received by Combined Underwriting on March

21, 2001.[9]  *Id.*

The CL 3036360 claim was assigned to Cheryl Hazard, a claims handler at U.S.

Underwriters.  Tr. at 229.  After reviewing the papers, Hazard determined that there was a potential

late notice issue and hired an investigator to find out if NYCHA had any explanation as to why the

loss was not reported sooner.  The investigator was unable to obtain an explanation for the delay.

Tr. at 241.  Hazard did not consult with Myrtetus about coverage for NYCHA under the CGL policy.

By letter dated April 11, 2001 to NYCHA's counsel in the Flores action, U.S. Underwriters

disclaimed coverage to NYCHA as to the Flores incident under policy number CL 3036360, the OCP

policy, on the ground of late notice.  The letter explained that "U.S. Underwriters will neither defend

nor indemnify you in the underlying [Flores] action" because NYCHA had not reported the loss "as

soon as practicable," as required by the conditions of the insurance policy.[10]  Pl. Ex. 25.

After further investigation into Flores-related claims and a deposition during which Falcon's

president provided testimony that contradicted earlier statements, U.S. Underwriters discovered

─────────────

[8] It appears that CL 3038419 was an incorrect or inapplicable policy number for NYCHA, but that Alice Musser, a supervisor at U.S. Underwriters, researched insurance coverage for NYCHA and handwrote in the CL 3036360 policy number.  Tr. at 232.

[9] I infer that Combined Underwriting received each of the documents—the copy of the notice, summons, complaint for NYCHA's third-party claims against Falcon in the Flores action; the copy of Flores' summons and complaint and NYCHA's verified answer; and the two Gary Emanuel insurance slips—from Gary Emanuel on March 21, 2001.

[10] The letter mistakenly provides the text of the notice provision from § IV.2 of the CGL policy rather than § IV.4 of the OCP policy.  Pl. Ex. 25.  But this oversight is immaterial because the two notice provisions are virtually identical and the rest of the letter clearly indicates that U.S. Underwriters is disclaiming on late notice grounds under the OCP policy.

evidence indicating that tile removal at the incident location had been performed by KZ & V Construction, a subcontractor of Falcon, and that Falcon's renovation work at the Patterson Houses was not limited to interior carpentry and residential plumbing.

By letter to Falcon dated May 1, 2002, U.S. Underwriters disclaimed coverage of Falcon under the CGL policy as to the Flores claim on the grounds that: (1) the work performed by Falcon fell outside of the classifications specified in the policy, and (2) claims arising from work performed by KZ & V Construction were excluded by the policy's independent contractors exclusion. The letter is addressed and directed to Harpal Rai, President of Falcon, and it specifically discusses U.S. Underwriters' defense and indemnity of Falcon in the Flores lawsuit. The letter does not mention NYCHA's claims for insurance related to the Flores incident. The letter was copied to a number of parties, including NYCHA. Pl. Ex. 28.

### III. CONCLUSIONS OF LAW[11]

**A.    Summary of Legal Issues**

At issue in this case is whether U.S. Underwriters must defend or indemnify NYCHA with respect to Flores' state court action based on the CGL policy or the OCP policy.

U.S. Underwriters argues that NYCHA is precluded from coverage under both policies because NYCHA failed to provide timely notice to U.S. Underwriters of the Flores claim, as required by both policies. In addition, U.S. Underwriters argues that the CGL policy does not apply because the Flores incident arose out of work performed by a subcontractor of Falcon, which is excluded from coverage by the independent contractors exclusion.

---

[11] This section may also include some additional findings of fact and determinations of mixed questions of fact and law.

NYCHA argues that it is covered under the CGL policy because: (1) NYCHA's notice to U.S. Underwriters of the Flores claim was timely—in that it was reasonable under the circumstances, and (2) U.S. Underwriters failed to disclaim to NYCHA under the independent contractors exclusion, and thus waived its right to disclaim on that ground.  NYCHA argues that it is covered under the OCP policy because: (1) NYCHA's notice was timely, (2) U.S. Underwriters waived its right to disclaim for late notice under the OCP policy by not disclaiming on that ground under that policy when it disclaimed for late notice under the CGL policy, and (3) U.S. Underwriters' OCP disclaimer letter was untimely.

This action is governed by New York law.  *U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.*, 2003 WL 22019429, at *4 (S.D.N.Y. Aug. 27, 2003).

**B.      Timeliness of NYCHA's Notice**

An insurer's duty to cover the losses of its insured is not triggered "unless the insured gives timely notice of loss in accordance with the terms of the insurance contract." *Travelers Ins. Co. v. Volmar Constr. Co.*, 752 N.Y.S.2d 286, 288 (1st Dep't 2002) (citations omitted).  "A notice provision in an insurance policy is a condition precedent to coverage and, absent a valid excuse, the failure to satisfy the notice requirement vitiates the policy." *Id.*

Both the CGL and OCP policies required NYCHA to see to it that U.S. Underwriters was notified "as soon as practicable" of a claim or suit brought against the insured, or of an occurrence that could give rise to such a claim or suit.  CGL Policy Coverage Form § IV.2, Pl. Ex. 1; OCP Policy Coverage Form § IV.4, Pl. Ex. 2.  The "as soon as practicable" notice requirement is "a standard provision in liability policies that has been interpreted to require notice within a reasonable time under the circumstances." *Volmar,* 752 N.Y.S.2d 286 at 288

14

(citations omitted).

U.S. Underwriters received notice of NYCHA's claims in March 2001—over one year after NYCHA received Flores' notice of claim regarding the incident.[12]  NYCHA's notice to U.S. Underwriters was untimely because it was not provided "as soon as practicable," as required by the CGL and OCP policies.  NYCHA argues that the delay was reasonable under the circumstances because the size of NYCHA and the scope of its projects caused Trobe to face numerous administrative difficulties as he navigated through various NYCHA departments during his investigation.  However, as stated above, I found that Trobe's delay in obtaining the relevant contract was caused primarily by: (1) the lack of knowledge of NYCHA employees and the absence of clear records at the Patterson Houses about tile repair work at the incident location, (2) Trobe's failure to contact the design and construction department about the contract, and (3) the general disorganization and inefficiency of NYCHA's filing and record-keeping systems—including the inability to search for certificates of insurance based on contract number and routine three-to-six month delays in obtaining files from the CAD.  These factors are simply not the type of "circumstances" that provide a valid excuse for NYCHA's delay, because they were within the responsibility and control of NYCHA and its investigator.  As a New York court has explained: "To urge complexity of government, dispersal and fragmentation of authority as an excuse [for the city's delay in notice to the insurer] is without merit.  The insured is required to exercise reasonable diligence and care in the discharge of responsibility; and its own inaction

_____

[12] As explained subsequently, I conclude that U.S. Underwriters received NYCHA's notice under the CGL policy on March 6, 2001, and that U.S. Underwriters received NYCHA's notice under the OCP policy on March 21, 2001.  However, for the purposes of the present discussion on the timeliness of NYCHA's notice, it suffices to say that U.S. Underwriters did not receive NYCHA's notice of claim under *any* policy prior to March 6, 2001.

or inefficiency does not absolve it from the consequences." *Kason v. City of New York*, 373

N.Y.S.2d 456, 459-60 (N.Y. Sup. Ct. 1975) (holding that city's 16-month delay in notifying

insurer of claim could not be excused by "the inefficiency of [the municipal government's]

specialized and fragmented bureaucracy"). *See also Eagle Ins. Co. v. Garcia*, 720 N.Y.S.2d 172,

173 (2d Dep't 2001) ("An insured's ignorance of his or her insurance carrier constitutes gross

negligence and is not a valid excuse for the failure to provide the carrier with timely notice.").

Even taking into account the size of NYCHA and the scope of its projects, I conclude that

NYCHA's notice to U.S. Underwriters of the Flores claim was untimely.

**C.     NYCHA's Coverage Under the CGL Policy**

U.S. Underwriters' March 12, 2001 letter to NYCHA's counsel in the Flores action

validly disclaimed coverage to NYCHA under the CGL policy on the grounds of late notice.[13]

Therefore, I conclude that U.S. Underwriters has no obligation to defend or indemnify NYCHA

with respect to Flores' state court action based on the CGL policy.[14]

I now turn to NYCHA's additional arguments for coverage under the OCP policy.

**D.     NYCHA's Coverage Under the OCP Policy**

NYCHA argues that it is covered under the OCP policy, even if its notice was untimely,

because: (1) U.S. Underwriters waived its right to disclaim for late notice under the OCP policy

by not disclaiming on that ground under that policy when it disclaimed for late notice under the

---

[13] The disclaimer letter, sent by U.S. Underwriters within one week of NYCHA's March 6, 2001 notice, was clearly timely.

[14] I need not reach U.S. Underwriters' additional argument that NYCHA is precluded from coverage under the CGL policy because the Flores injury arose out of work performed by a subcontractor of Falcon.

CGL policy, and (2) U.S. Underwriters' OCP disclaimer letter was untimely.

To evaluate these arguments, I must first determine precisely when U.S. Underwriters received NYCHA's notice under the CGL and OCP policies.

### 1.  Timing of NYCHA's Notice

To begin, I review the relevant sequence of communications in February and March 2001. By letter dated February 26, 2001, NYCHA's counsel in the Flores action contacted Falcon, described the Flores claim, provided a copy of Flores' notice of claim and summons and complaint, and requested that Falcon forward these documents to Falcon's insurance carrier so that the assumption of the defense of NYCHA could be promptly effectuated.  On March 6, 2001, Falcon's broker forwarded these documents, along with a declaration sheet for the CGL policy, numbered CL 3036359, to Combined Underwriting.  On March 21, 2001, Combined Underwriting received the following documents from Falcon's broker: (1) a copy of the notice, summons, complaint for NYCHA's third-party claims against Falcon in the Flores action; (2) a copy of Flores' summons and complaint and NYCHA's verified answer, and (3) two insurance slips from Gary Emanuel.  The insurance slips list NYCHA and Falcon as insured parties, and reference policy number CL 3038419 in addition to CL 3036359.

U.S. Underwriters argues that the March 6, 2001 communication was notice by Falcon—of a claim *against Falcon* by NYCHA—which may not be treated as notice by NYCHA.  *See Webster v. Mount Vernon Fire Is.* Co., 368 F.3d 209, 215 (2d Cir. 2004) (quoting *Travelers Ins. Co. v. Volmar Constr. Co.*, 752 N.Y.S.2d 286, 289-90 (1st Dep't 2002)) ("notice provided by one insured in accordance with the policy terms will not be imputed to another insured.").  U.S. Underwriters argues that the March 6, 2001 did not provide notice under

NYCHA's own policies of insurance because NYCHA's February 26th letter asks Falcon to forward the documents to "your [Falcon's] insurance carrier," Pl. Ex. 9A, not "our [NYCHA's] insurance carrier."  U.S. Underwriters contends that notice was not provided on NYCHA's behalf under either policy until the March 21, 2001 transmissions, which indicated that NYCHA was itself an insured party.

NYCHA, on the other hand, argues that it provided notice under *both* the CGL and OCP policies through the March 6, 2001 transmission.  NYCHA emphasizes that the notice provisions in the CGL and OCP policies do not explicitly require the insured to specify a policy number under which coverage is being sought.  CGL Policy Coverage Form § IV.2, Pl. Ex. 1; OCP Policy Coverage Form § IV.4, Pl. Ex. 2.  NYCHA characterizes the March 21, 2001 transmissions as merely follow-up documents to the original claim for insurance.

I conclude, however, that U.S. Underwriters received NYCHA's notice under the CGL policy on March 6, 2001, and that U.S. Underwriters received NYCHA's notice under the OCP policy on March 21, 2001.  I reach these conclusions for the following reasons.

NYCHA's February 26th letter requested that Falcon forward the Flores documents to Falcon's insurance carrier so that the assumption of the defense of NYCHA could be promptly effectuated.  Based on this request, I conclude that Falcon's March 6, 2001 transmission to Combined Underwriting was sent on behalf of NYCHA.[15]  The February 26th letter refers to

---

[15] For this reason, the case at bar is distinguishable from *Webster*, 368 F.3d at 215, and *Volmar*, 752 N.Y.S.2d at 289-90, cited by the plaintiff, where the courts stated that notice provided by one insured would not be imputed to another insured.  Those cases did not involve any suggestion that one insured was acting on behalf of another; in this case, NYCHA's February 26, 2001 letter indicates that Falcon was carrying out NYCHA's instructions when it forwarded materials—including the February 26th letter—to U.S. Underwriters on March 6, 2001.

"your [Falcon's] insurance carrier," but the March 6, 2001 materials also reference policy

number CL 3036359.  By reviewing the letter and referenced policy, U.S. Underwriters could and

did discover that NYCHA was an additional insured to the CGL policy under which Falcon was

the named insured.  Thus, the reference to the CL 3036359 policy in the March 6, 2001 materials,

in combination with NYCHA's request that an insurance carrier assume NYCHA's defense in

the Flores action, gave U.S. Underwriters sufficient indication that notice was being provided by

NYCHA under the CGL policy.  Furthermore, Myrtetus' March 12, 2001 disclaimer letter

acknowledged that "NYCHA has been added to the Company's policy [the CGL policy] as an

Additional Insured" and stated that NYCHA had failed to satisfy notice provisions in the CGL

policy—provisions that apply to *insured* parties.  Pl. Ex. 22.  Therefore, I conclude that the

March 6, 2001 transmission to Combined Underwriting was notice by NYCHA under the CGL

policy.

However, I conclude that the March 6, 2001 transmission did not provide notice by

NYCHA under the OCP policy.  Although the notice provisions in the CGL and OCP policies do

not explicitly require the insured to specify a policy number under which coverage is sought, I

conclude that there is an implicit requirement that the notice reasonably indicate the basis under

which coverage is sought.[16]  As noted above, the March 6, 2001 materials provided a reasonable

---

[16] Although "notice requirements are to be liberally construed in favor of the insured"
under New York law, *Morris Park Contracting Corp. v. Nat'l Union Fire Ins. Co.*, 822 N.Y.S.2d
616, 618 (2d Dep't 2006), I nonetheless conclude that a reasonable indication of the basis for
coverage is implicit in the notice provisions.  A basic purpose of notice provisions in insurance
contracts is "to afford the insurer an opportunity to protect itself."  *Sec. Mut. Ins. Co. of N.Y. v.
Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440 (1972).  A reasonable indication of the basis for
coverage allows the insurer to identify the applicable insurance policies, and to determine
whether the claim is in fact covered under the terms of those policies.  This implicit requirement
is routinely satisfied when an insured mentions the relevant policy numbers, indicates that it is

indication of NYCHA's claim for coverage under the CGL policy because they included

NYCHA's request that an insurance carrier assume NYCHA's defense in the Flores action and

referenced the CGL policy, under which NYCHA was an additional insured.  But the materials

did not provide a reasonable indication of NYCHA's claim for coverage under the OCP policy.

They did not include a declaration sheet for the OCP policy, reference the OCP policy, or

otherwise provide any indication that NYCHA was seeking coverage under its *own* policy,

separate from a policy also held by Falcon.[17]  Although Myrtetus could have called the

underwriting department to check if NYCHA was insured under any other U.S. Underwriters

policies, her failure to do so was reasonable because the March 6, 2001 materials from Falcon

referenced a specific policy number and gave no indication that coverage was sought under a

separate policy independently held by NYCHA.[18]

I conclude that NYCHA did not provide notice under the OCP policy until Combined

Underwriting received the March 21, 2001 transmission from Gary Emanuel.  These materials

---

seeking coverage under its insurance policies, *or* contacts the insurer directly and requests
coverage; each of these communications reasonably indicates the basis under which coverage is
sought, and allows the insurer to identify the applicable insurance policies.

[17] As noted above, the February 26th letter referenced "your [Falcon's] insurance carrier,"
not "our [NYCHA's] insurance carrier."  Pl. Ex. 9A.  This reference was not fatal to NYCHA's
notice under the CGL policy because Falcon was the named insured on that policy.  But the
reference sharply undermines NYCHA's contention that the March 6, 2001 materials provided
notice under the OCP policy because the OCP policy provides no coverage to Falcon.

[18] The situation would be very different if, for example, NYCHA had written a letter
requesting coverage under "our [NYCHA's] insurance policies," or if NYCHA had written
directly to its insurer requesting coverage.  Even though such notices do not include specific
policy numbers, they reasonably indicate the basis under which coverage is sought.  Under those
circumstances, it would be reasonable to expect the claims handler to call the underwriting
department to look up the policies under which NYCHA was insured.

for the first time indicated that NYCHA could be a named insured, and referenced an additional

policy, numbered CL 3038419, which ostensibly provided coverage to NYCHA.  Although the

CL 3038419 policy number turned out to be inapplicable, the March 21, 2001 materials provided

sufficient indications for U.S. Underwriters to look up the CL 3036360 policy held by

NYCHA—as in fact was done by U.S. Underwriters.

Therefore, I conclude that U.S. Underwriters received NYCHA's notice under the CGL

policy on March 6, 2001, and under the OCP policy on March 21, 2001.  Having established the

precise timing of NYCHA's notice under the CGL and OCP policies, I now turn to NYCHA's

additional arguments for coverage under the OCP policy.

### 2.  Waiver of Late Notice Disclaimer Under OCP Policy

NYCHA argues that U.S. Underwriters waived its right to disclaim for late notice under

the OCP policy by not disclaiming on that ground under that policy when it disclaimed for late

notice under the CGL policy.  For that proposition, NYCHA relies upon Judge Duffy's opinion

in a case involving a different underlying incident but the same parties and policies as those in

the instant case.  *See U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.*, 2004 WL 1497563, at

*4 (S.D.N.Y. July 1, 2004) ("*Falcon*").  Judge Duffy there held that after notice by the insured,

the insurer's late notice defense with respect to the OCP policy was waived when it was not

asserted at the same time as the late notice disclaimer to CGL policy.

This argument hinges on NYCHA's contention that the March 6, 2001 communication

provided NYCHA's notice to U.S. Underwriters under both the CGL and OCP policies.  As

explained above, however, I reject that contention and conclude that the March 6, 2001

communication provided NYCHA's notice under the CGL policy, but not under the OCP

21

policy.[19]  U.S. Underwriters only received NYCHA's notice under the OCP policy on March 21,

2001—*after* it had already issued the late notice disclaimer letter under the CGL policy, on

March 12, 2001.  Therefore, U.S. Underwriters did not waive its late notice defense with respect

to the OCP policy when that disclaimer was not asserted at same time as the late notice

disclaimer to CGL policy.

### 3.  Timeliness of U.S. Underwriters' Late Notice Disclaimer Under the OCP Policy

An insurer is obligated to disclaim coverage within a reasonable amount of time

following the insured's notice to the insurer of the occurrence or claim.  *See Webster v. Mount*

*Vernon Fire Ins. Co.*, 368 F.3d 209, 214 (2d Cir. 2004).  If the insurer fails to disclaim coverage

within a reasonable amount of time, the insurer is then "estopped . . . from later denying

coverage, even though the insurer would have otherwise been entitled to deny coverage based on

the insured's failure to give timely notice."  *Id.* at 215.

NYCHA argues that U.S. Underwriters' disclaimer under the OCP policy was untimely.

U.S. Underwriters—through its agent, Combined Underwriting—received notice of NYCHA's

claim under the OCP policy on March 21, 2001.  The claim was forwarded from Combined

Underwriting to U.S. Underwriters and assigned to Hazard, a claims handler at U.S.

Underwriters.  Hazard reviewed the papers and hired an investigator to find out if NYCHA had

---

[19] The case at bar is distinguishable from *Falcon*, 2004 WL 1497563, the case relied on
by NYCHA in support of its waiver argument.  In *Falcon*, NYCHA wrote directly to U.S.
Underwriters and demanded insurance coverage after an incident.  This communication appears
to have provided a reasonable indication that NYCHA was seeking coverage under any policies it
held with U.S. Underwriters, which included both the CGL and OCP policies.  In the case at bar,
I conclude that the initial March 6, 2001 communication only provided notice of NYCHA's
claim under the CGL policy, and that notice of NYCHA's claim under the OCP policy was not
provided until March 21, 2001.

any explanation as to why the loss was not reported sooner.  When the investigator was unable to obtain an explanation for the delay after about two weeks, Hazard disclaimed under the OCP policy, on the ground of late notice, on April 11, 2001—21 days after U.S. Underwriters received notice of NYCHA's claim under the OCP policy.  NYCHA argues that Hazard could have consulted with Myrtetus and immediately disclaimed under the OCP policy around March 22, but I conclude that it was completely reasonable for Hazard to investigate whether NYCHA had any explanation for the delay before disclaiming on late notice grounds.  Under these circumstances, I conclude that the 21-day delay was reasonable, and that U.S. Underwriters' disclaimer under the OCP policy was timely.

For these reasons, U.S. Underwriters validly disclaimed coverage to NYCHA under the OCP policy on the ground of late notice.  I therefore conclude that U.S. Underwriters has no obligation to defend or indemnify NYCHA with respect to Flores' state court action based on the OCP policy.

**E.     Summary of Conclusions of Law**

To summarize, I reach the following conclusions of law:

1.  NYCHA's notice of the Flores claim under the CGL policy was untimely.

2.  U.S. Underwriters validly disclaimed coverage to NYCHA under the CGL policy on the ground of late notice.

3.  Therefore, U.S. Underwriters had no obligation to defend or indemnify NYCHA with respect to Flores' state court action based on the CGL policy.

4.  NYCHA's notice of the Flores claim under the OCP policy was untimely.

5.  U.S. Underwriters did not waive its late notice defense with respect to the OCP policy

23

when that disclaimer was not asserted at same time as the late notice disclaimer to the CGL policy.

6. U.S. Underwriters' disclaimer to NYCHA under the OCP policy was timely.

7. U.S. Underwriters validly disclaimed coverage to NYCHA under the OCP policy on the ground of late notice.

8. Therefore, U.S. Underwriters had no obligation to defend or indemnify NYCHA with respect to Flores' state court action based on the OCP policy.

## IV. CONCLUSION

Plaintiff is entitled to a judgment declaring that U.S. Underwriters has no duty, under the commercial general liability policy numbered CL 3036359 or the owners and contractors protective liability policy numbered CL 3036360, to defend or indemnify NYCHA with respect to the personal injury claim asserted by Ana Flores against NYCHA in an action in the Supreme Court of the State of New York, Bronx County entitled *Flores v. New York City Housing Authority*, Index No. 15136/00.

Counsel for U.S. Underwriters is directed to settle a Judgment consistent with this Opinion on ten (10) days' notice.

It is SO ORDERED.

Dated: New York, New York
April 4, 2007

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

24